## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

| | |
|---|---|
| BRITANIA URIOSTEGUI RIOS,<br><br>                              *Plaintiff*,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity<br>as President of the United States;<br><br>KRISTI NOEM, in her official capacity as<br>Secretary of the Department of Homeland<br>Security,<br><br>TODD LYONS, in his official capacity as Acting<br>Director and Senior Official Performing the<br>Duties of the Director of U.S. Immigration and<br>Customs Enforcement;<br><br>SCOTT LADWIG, in his official capacity as<br>Acting Field Office Director of the New Orleans<br>Field Office of U.S. Immigration and Customs<br>Enforcement, Enforcement and Removal<br>Operations;<br><br>PAMELA BONDI, in her official capacity as the<br>Attorney General of the United States; and<br><br>MARCO RUBIO, in his official capacity as<br>Secretary of State,<br><br>                              *Defendants*. | Civil Action No. 1:25-cv-1798 |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT

## INTRODUCTION

1.      Law absent a remedy is useless. *See A Series of Essays on the Principles and Policy of Free States* (Pittsfield, Mass., 1820; Poor, Jefferson's Library, 11, no. 653) at 84, 148. For this reason, where there is a right, there must be a remedy—lest we forget the Latin maxim dating back centuries standing for this exact proposition: *ubi jus ibi remedium.*

2.      Plaintiff Britania Uriostegui Rios ("Britania" or "Plaintiff") files this complaint for injunctive relief and declaratory judgment because Defendants violated a right afforded to her by judicial decree. That legal right prohibited her removal to Mexico.

3.      Defendants removed her there anyway.

4.      Britania deserves a remedy for Defendants' unlawful actions.

5.      In fact, if Defendants had not been caught by counsel red-handed, violating the judicial decree at issue, Britania would be just another casualty (the number of which at this juncture remains unknown) of a mass deportation campaign running roughshod of the law at innumerable turns. *See, e.g.*, *Noem v. Abrego Garcia*, 604 U.S. 145 S.Ct. 1017 225 L.Ed.2d 655 (2025)*; see also* Lopez, Maribel et. al. *She was Deported in Error. Her Child was Left Behind*, N.Y. Times (Nov. 17, 2025), at https://www.nytimes.com/2025/11/14/us/trump-deportations-families.html?searchResultPosition=1.

6.      In the case at bar, on November 11, 2025, Britania was deported to Mexico by Defendants in violation of an Immigration Judge's Order ("IJ Order") granting her protection and deferral of removal to Mexico under the United Nations Convention Against Torture ("DCAT"). *See* **Ex. A** (March 14, 2025 Order).

7.      DCAT relief is granted where an individual seeking protection demonstrates that it is more likely than not that she will be tortured or killed with the acquiescence of the government—

an extremely high bar to pass. 8 C.F.R. §§ 1208.16(c)(3), 1208.17; *see Johnson v. Guzman Chavez*, 141 S. Ct. 2271, 2283 (2021); **Ex. B** (Decl. of T. Lepson), at ¶ 5.  Britania met this standard and, on March 14, 2025, the IJ Order issued. *See* **Ex. C** (Decl. Q. Hodges).

8.      On November 11, 2025, without any notice whatsoever being provided to Britania's immigration counsel, let alone her federal habeas counsel, *see Uriostegui Rios v. Trump et al,* Case No. 1:25-cv-01320-JE-JPM ("*Rios*"), Britania was flown to Harlingen, Texas, from Winn Correctional Center in Winnfield, Louisiana.  *See* **Ex. D** at 4 (email from Defendants' counsel concerning Britania's wrongful removal from the United States ("Emails with AUSA") ); *see also* **Ex. B** (Decl. of T. Lepson), at ¶ 7.  Britania was then placed on a bus to the Brownsville Border Station, at the border between the United States and Mexico, without any of her property, including money, necessary medications, and a cellphone.

9.      The problem with Britania's removal to Mexico is clear—while she does have a final order of removal, that order exists alongside an order deferring her removal to Mexico pursuant to CAT. *Id* at ¶ 5; *see also Johnson*, 141 S. Ct. at 2283 (explaining that an IJ may issue a removal order and simultaneously withhold or defer the execution of that order with respect to the country or countries for which the non-citizen demonstrated a sufficient risk of persecution or torture).

10.     For Britania, this means that, although Defendants may theoretically attempt to remove Britania to a third country (all efforts towards which have failed and thus are the subject of her pending habeas petition, *see Rios*, Case No. 1:25-cv-01320-JE-JPM, Dkt. 1), they cannot remove her to Mexico. *Id.*

11.      There is simply no question that Immigration and Customs Enforcement ("ICE") was apprised of Britania's DCAT order from March 14, 2025. *See* **Ex. C** (Decl. Q. Hodges).

Nonetheless, they ignored it.

12.     Now exposed, caught *flagrante delicto* of the IJ's Order, Defendants concede that Britania was removed in violation of that Order.  *See* **Ex. D** at 4 (Emails with AUSA). But, other than informing Britania's habeas counsel that Defendants will allow Britania to reenter the United States if she happens to make it to a port of entry without dying, they offer no additional aid whatsoever. *Id.*  at 1, 6 (email from Defendants' counsel concerning Britania's wrongful removal from the United States).  This is more than a curious approach to take, given that Plaintiff's counsel was provided with no notice that Britania was being deported, did not deport Britania themselves, and are not privy to ICE operations or where exactly Britania was deported to in Mexico and when. *Id.* at

13.     Since Britania's arrival in Mexico, she has managed to make only a few phone calls to her counsel in the United States, as she tries to piece together how to safely return and not die in the process. *See generally* **Exs. B & D**.  Britania's immigration counsel has "grave concerns for [Britania's] life and safety" as she navigates her way back to the United States. **Ex. B** (Decl. of T. Lepson), at ¶ 8.

14.     In bringing this action, Britania asks this Court to:

- Declare that Defendants' actions violated the laws of the United States and the Fifth Amendment to the United States Constitution.

- Order Defendants to take all steps reasonably available to them, proportionate to the gravity of the ongoing harm, to return her to the United States, including ensuring that she is allowed to reenter the country without incident on November 18, 2025—when she is scheduled to arrive at a mutually agreed upon port of entry.

- Further order Defendants to release her on an Order of Supervision ("OSUP"),[1] because the government cannot be entrusted to follow the law and judicial decree at issue here: DCAT protection granted by an IJ on March 14, 2025. "[I]nadvertent" removal cannot be tolerated—and it absolutely cannot be tolerated a second time—as it places Britania's life in the very danger the DCAT order sought to protect. This requested remedy is necessary to ensure that Britania's right to protection pursuant to DCAT is more than an empty promise lacking any force of law. The fact that Defendants unlawfully removed Britania to Mexico, despite a court order, makes clear they cannot (and, apparently, will not) ensure they do not violate Britania's DCAT protection.

- Order Defendants to remunerate her for the expenses she incurred as a result of her wrongful deportation.

### JURISDICTION AND VENUE

15.     This Court has jurisdiction to hear this case under 28 U.S.C. § 2201, the Declaratory Judgment Act; 28 U.S.C. § 1331, Federal Question Jurisdiction; 28 U.S.C. § 1346(a)(2), because the individual Defendants are United States officials; and 28 U.S.C. §1361 as a civil action seeking to compel an officer, employee, or agency to perform a duty to Plaintiff.

16.     The Court has authority to enter a declaratory judgment and to provide temporary, preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure, 28 U.S.C. §§ 2201-2202, the All Writs Act, and the Court's inherent equitable

---

[1]    Any detention of immigrants with final orders of removal is authorized and limited by 8 U.S.C. § 1231, the statute governing detention following a final order of removal ("post-order detention"). 8 U.S.C. § 1231 authorizes the detention of individuals following a final order of removal only under specifically delineated circumstances. The third subclause of 8 U.S.C. § 1231(a)(3) provides that an individual who is not removed within a 90-day statutory removal period "*shall* be subject to supervision" (emphasis added) under specific terms, including requirements that he or she appear periodically before an immigration officer and obey any written restrictions. As has been made abundantly clear here and in *Rios*, Dkt. 1, that 90-day detention period has passed.

4

powers.

17.    Venue lies in this District because Plaintiff last resided in this District and Defendants are associated with agencies or officers of the United States sued in their official capacities.  28 U.S.C. § 1391(e)(1).

## THE PARTIES

18.    Plaintiff is a judicially declared and determined mentally incompetent transgender woman who was appointed legal counsel in her immigration proceedings due to the fact that she is mentally incompetent. **Ex. B** (Decl. of T. Lepson), at ¶ 2. She was in ICE custody from April 16, 2024, until November 11, 2025. *See Rios*, Dkt. 1, at ¶ 4; *see supra* at ¶ 5. Prior to her detention, Britania was a lawful permanent resident, a status she had earned on December 5, 2011. *See Rios*, Dkt. 1, at ¶ 23.  She lost that status after pleading guilty to a Nevada Class B felony. *Id*. She was ultimately granted DCAT on March 14, 2025.  *See* **Ex. A** (March 14, 2025 Order).

19.    Defendant Donald J. Trump is sued in his official capacity as President of the United States. In this role, he is ultimately responsible for the policies and actions of the executive branch, including those of the Department of Homeland Security ("DHS").

20.    Defendant Kristi Noem is the Secretary of the DHS.  She is sued in her official capacity.  She is the cabinet-level secretary responsible for all immigration enforcement in the United States.

21.    Defendant Todd Lyons is the Acting Director of ICE. He is sued in his official capacity. He is the head of the federal agency responsible for all immigration enforcement in the United States.

22.    Defendant Scott Ladwig is ICE's Acting Field Office Director for the New Orleans Field Office of ICE Enforcement and Removal Operations.  He is sued in his official capacity.  As

Field Office Director, Respondent Ladwig oversees ICE's enforcement and removal operations in the New Orleans area of responsibility, which includes Louisiana.

23.     Defendant Pamela Bondi is the Attorney General of the United States. She is sued in her official capacity. The IJs who decide removal cases and application for relief from removal do so as her designees.

24.     Defendant Marco Rubio is the Secretary of State of the United States. He is sued in his official capacity. He is the individual ultimately responsible for allowing Plaintiff entry into the United States now that she has been unlawfully ejected herefrom.

**LEGAL BACKGROUND**

25.     U.S. immigration law affords noncitizens in the United States three forms of protection from persecution and/or torture: (a) asylum; (b) withholding of removal; and (c) protection under CAT. Asylum is a form of protection available in removal proceedings that may be granted in the exercise of discretion where the applicant demonstrates a well-founded fear of persecution in her home country on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. §§ 1101(a)(42), 1158(b)(1)(A).

26.     For individuals determined to be ineligible for asylum, Congress further provided, with certain exceptions not relevant here, that "notwithstanding [8 U.S.C. §§ 1231(b)(1) and (2)], the Attorney General [*i.e.*, DHS] may not remove [a noncitizen] to a country if the Attorney General [(*i.e.*, an IJ)] decides that [the noncitizen's] life or freedom would be threatened in that country because of [the noncitizen's] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *see also* 8 C.F.R. §§ 208.16, 1208.16. This form of protection, known as withholding of removal, is mandatory—*i.e.*, it cannot be denied to eligible individuals in the exercise of discretion. The protection of withholding of removal is

country specific.

27.    While statutes place certain restrictions on eligibility to seek asylum and withholding of removal, *see e.g.* 8 U.S.C. § 1158(c)(2), 8 U.S.C. § 1231(b)(3)(B), there are no restrictions on eligibility to apply for CAT deferral of removal. *See* Foreign Affairs 11 Reform Restructuring Act of 1998 (FARRA) (codified as Note to 8 U.S.C. § 1231); 8 C.F.R. §§ 208.16(c), 208.17(a), 1208.16(c), 1208.17(a); 28 C.F.R. § 200.1.  Like withholding of removal under 8 U.S.C. § 1231(b)(3), CAT protection is mandatory and country specific.  *Id*.  CAT prohibits removal to any country where there is a substantial risk of torture, 28 C.F.R. § 200.1, and individuals are eligible for CAT protection no matter the basis of their removal order.  *See* 8 C.F.R. §§ 208.16–208.18, 208.31, 241.8(e), 1208.16–1208.18.

28.    To be granted CAT relief, a noncitizen must show that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal."  8 C.F.R. § 1208.16(c)(2). An applicant for CAT relief must show a higher likelihood of torture than the likelihood of persecution an asylum applicant must demonstrate. *See id.*

29.    A noncitizen can appeal the denial of an application for asylum, withholding of removal, or CAT protection to the Board of Immigration Appeals ("BIA"), and later to the federal courts of appeals.  *See* 8 U.S.C. § 1252(a); 8 C.F.R. §§ 208.31(e), 1003.6(a), 1208.31(e), (g)(2)(ii), 1240.15; *Nasrallah v. Barr*, 590 U.S. 573, 575 (2020).

30.    When an IJ grants a noncitizen withholding or CAT relief, the IJ issues a removal order and simultaneously withholds or defers that order with respect to the country or countries for which the non-citizen demonstrated a sufficient risk of persecution or torture. *See Johnson,* 141 S. Ct. at 2283.

31.    Once withholding or CAT relief is granted, either party has the right to appeal that

decision to the BIA within 30 days. *See* 8 C.F.R. § 1003.38(b). If both parties waive appeal or neither party appeals within the 30-day period, the withholding or CAT relief grant and the accompanying removal order become administratively final. *See id.* § 1241.1.

32.     An IJ may only terminate a grant of CAT protection based on evidence that the person will no longer face torture. DHS must move for a new hearing and provide evidence "relevant to the possibility that the [noncitizen] would be tortured in the country to which removal has been deferred and that was not presented at the previous hearing." 8 C.F.R. §§ 208.17(d)(1), 1208.17(d)(1). If a new hearing is granted, the IJ must provide notice "of the time, place, and date of the termination hearing," and must inform the noncitizen of the right to "supplement the information in his or her initial [withholding or CAT] application" "within 10 calendar days of service of such notice (or 13 calendar days if service of such notice was by mail)." 8 C.F.R. §§ 208.17(d)(2), 1208.17(d)(2).

33.     Britania was granted DCAT on March 14, 2025. Neither Britania nor the government appealed, rendering the order final.

## RELEVANT STATEMENT OF FACTS AND PROCEDURAL HISTORY

34.     Britania was a long-term, lawful permanent resident of the United States. Her immigration status was adjusted to long-term permanent resident in 2011. **Ex. C** (Decl. Q. Hodges)**.**

35.     On August 28, 2023, Britania was detained at Clark County Detention Center in Las Vegas, Nevada, following an arrest on the same day. *Id.* at ¶ 13. She was sentenced to a suspended sentence of 18-60 months and for probation thereafter that was not to exceed 36 months. *Id*. Britania was then detained by ICE on April 16, 2024, and placed into immigration removal proceedings on that date by service of a Notice to Appear ("NTA"). *Id.* at ¶ 17.

36.    Britania was subsequently deemed incompetent by an IJ on August 20, 2024.  **Ex. B** (Decl. of T. Lepson), ¶ 3.

37.    Britania succeeded on her DCAT claim on March 14, 2025.  *Id.* at ¶ 4.

38.    On June 4, 2025, ICE provided Britania with a letter ("Decision to Continue Detention") notifying her that ICE had reviewed her custody status and had determined that she will continue to be detained, citing flight risk and dangerousness, but offering no indication of the country to which it was considering deporting her.  **Ex. C** (Decl. Q. Hodges), ¶ 24.

39.    On June 19, 2025, Britania was transferred again, also without advanced notice, to Winn Correctional Center in Winnfield, Louisiana.  *See*. **Ex. B** (Decl. of T. Lepson), ¶ 6.

40.    On November 11, 2025, Britania was transferred from Winn Correctional Center in Louisiana to Texas, from where she was bused to the border of Mexico and dropped there.

41.    On November 12, 2025, Britania was able to make a phone call to her immigration attorney in the United States.  **Ex. B** (Decl. of T. Lepson), at ¶ 7.

42.    On November 12, 2025, Britania's habeas counsel contacted Defendants' counsel, who conceded that Britania's DCAT order had been violated when she was wrongfully deported to Mexico.  *See* **Ex. D** at 4-7 (Emails to AUSA).  The removal, per Defendants' counsel, was characterized as "inadvertent."

43.    As of the date of this Complaint, Britania remains in Mexico. She has been attempting, every day since she was cast aside in the homeland from which she fears torture, to make it back to the country that wrongfully ejected her, contrary to judicial decree—all while placing her life and limb at jeopardy in the process.  She has been doing so without any assistance from Defendants, despite their admission that she lies in her current precarious and life-threatening predicament as a result of their illegal actions.  *See generally,* **Ex. D (**Emails to AUSA) .

## CLAIMS FOR RELIEF

### COUNT 1: VIOLATION OF CAT, 28 C.F.R. § 200.1

44.     Plaintiff incorporates the foregoing paragraphs by reference.

45.     CAT prohibits removal to any country where there is a substantial risk of torture, 28 C.F.R. § 200.1, and individuals are eligible for CAT protection no matter the basis of their removal order. *See* 8 C.F.R. §§ 208.16–208.18, 208.31, 241.8(e), 1208.16–1208.18.

46.     Defendants removed Britania to Mexico, the country from which she had DCAT protection without formally terminating her right to DCAT, thus violating the law.

47.     Defendants' violation of law, as set forth herein, is causing Britania irreparable harm each day she spends outside the United States in Mexico, from where was granted protection under CAT.

48.     Plaintiff asks the Court to immediately order Defendants to take all steps reasonably available to them, proportionate to the gravity of the ongoing harm, to return Plaintiff to the United States.

### COUNT 2: VIOLATION OF PROCEDURAL DUE PROCESS, U.S. CONST., AMENDMENT V

49.     Britania incorporates the foregoing paragraphs by reference.

50.     Britania has a procedural due process right to not be removed to Mexico, the country from which he had been granted CAT protection.

51.     As set forth above, Defendants removed Britania to Mexico, the country from which she has CAT protection without formally terminating CAT, thus violating his procedural due process rights under the Fifth Amendment to the U.S. Constitution.

52.     Defendants' violation of law, as set forth herein, is causing Britania irreparable

harm each day she spends outside the United States in Mexico.

53.    Britania asks the Court to immediately order Defendants to take all steps reasonably available to them, proportionate to the gravity of the ongoing harm, to return Plaintiff to the United States.

### COUNT 3: VIOLATION OF SUBSTANTIVE DUE PROCESS, U.S. CONST., AMENDMENT V

54.    Britania incorporates the foregoing paragraphs by reference.

55.    Britania has a substantive due process right under the Fifth Amendment to the U.S. Constitution not to be subjected to government conduct that shocks the conscience.  Defendants' conduct as set forth above violates that right.

56.    Defendants' conscience-shocking actions, as set forth herein, is causing Britania irreparable harm each day she spends outside the United States in Mexico.

### COUNT 4: ADMINISTRATIVE PROCEDURE ACT 5 U.S.C. § 706(2)(A)

57.    Britania incorporates the foregoing paragraphs by reference.

58.    The Administrative Procedure Act provides that courts "shall . . . hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion."  5 U.S.C. § 706(2)(A).

59.    Defendants' actions as set forth herein were arbitrary, capricious, and an abuse of discretion.

60.    Defendants' arbitrary and capricious actions, as set forth herein, are causing Plaintiff  irreparable harm each day she spends outside the United States in Mexico.

61.    Britania asks the Court to immediately order Defendants to take all steps reasonably available to them, proportionate to the gravity of the ongoing harm, to return her to the United States.

## COUNT 5: MANDAMUS ACTION, 28 U.S.C. §1361

62.    Britania incorporates the foregoing paragraphs by reference.

63.    28 U.S.C. § 1361 is a civil action seeking to compel an officer, employee, or agency of the United States to perform a duty owed to a plaintiff.

64.    Defendants removed Britania to Mexico, placing her life in danger and violating the law and the duty that the government owed to her—to not engage in behavior that threatens her life.

65.    Defendants removed Britania to Mexico, the country from which she had DCAT protection without formally terminating her right to DCAT, thus violating the law.

66.    Defendants are therefore required to facilitate Britania's return without incident.

### REQUEST FOR RELIEF

Britania prays for judgment against Defendants and respectfully requests that the Court:

(a)    Declare that Defendants' actions, as set forth herein, violated the laws of the United States and the Fifth Amendment to the U.S. Constitution;

(b)    Order Defendants to take all steps reasonably available to them, proportionate to the gravity of the ongoing harm, to return her to the United States, including ensuring that she is allowed to reenter the country without incident on November 18, 2025—when she is scheduled to arrive at a mutually agreed upon port of entry;

(c)    Order Defendants to release Britania on an OSUP upon her return to the United States;

(d)     Order Defendants to renumerate her for the costs incurred to return herself to

the United States; and

(e)     Grant such other relief at law and in equity as justice may require.


Dated: November 17, 2025

Respectfully submitted,

*/s/ Sarah E. Decker*
Sarah E. Decker*
ROBERT F. KENNEDY HUMAN RIGHTS
1300 19th Street NW, Suite 750
Washington, DC 20036
Tel.: (908) 967-3245
decker@rfkhumanrights.org

*/s/ Sarah T. Gillman*
Sarah T. Gillman*
ROBERT F. KENNEDY HUMAN RIGHTS
88 Pine Street, 8th Floor, Suite 801
New York, New York 10005
Tel.: (646) 289-5593
gillman@rfkhumanrights.org

*/s/ Bridget Pranzatelli*
Bridget Pranzatelli
LA Bar No. 41899
NATIONAL IMMIGRATION PROJECT
1763 Columbia Road NW, Ste. 175 #896645
Washington, DC 20009
Tel: (504) 940-4777
bridget@nipnlg.org

*/s/ Charles Andrew Perry*
*/s/Nora Ahmed*
ACLU Foundation of Louisiana
Charles Andrew Perry
LA Bar No. 40906
Nora Ahmed*
NY Bar No. 5092374
1340 Poydras St., Ste. 2160
New Orleans, LA 70112
Tel: (504) 522-0628
aperry@laaclu.org
nahmed@laaclu.org

*Attorneys for Plaintiff*
*\* Pro hac vice applications forthcoming*