Ex. B

UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| BRITANIA URIOSTEGUI RIOS,<br><br>by next friend, Talia Lepson,<br><br>*Plaintiff*,<br><br>v.<br><br>TRUMP, et al.,<br><br>*Defendants*. | Civil Action No. |

DECLARATION OF TALIA LEPSON
UNDER PENALTY OF PERJURY UNDER 28 USCA §1746

I, Talia Lepson, declare under penalty of perjury under the laws of the United States of America:

1. I am an associate with Open Immigration Legal Services in Oakland, CA, which serves low-income immigrants in removal proceedings before EOIR and USCIS. The National Qualified Representative Program ("NQRP") is a nationwide program to provide attorneys to certain unrepresented, detained individuals who have been found mentally incompetent to represent themselves in immigration proceedings by an immigration judge. I serve as Qualified Representative ("QR") in several National Qualified Representative cases and *Franco-Gonzalez* class member proceedings before EOIR and the Board of Immigration Appeals.

2. Petitioner Britania Uriostegui Rios ("Britania") was determined to be incompetent by an immigration judge and appointed a qualified representative in her removal proceedings on August 20, 2024. I was ultimately assigned the case and entered my appearance in immigration court on October 3, 2024.

3. Britania is a transgender woman and a citizen and national of Mexico. She has several mental health diagnoses, including Complex Post-traumatic Stress Disorder ("CPTSD"), major depressive disorder and gender dysphoria. She is also a person living with HIV and takes gender-affirming hormones.

4. Following proceedings before the immigration court on March 14, 2025, Britania was granted deferral of removal under the Convention Against Torture ("DCAT") to Mexico by an immigration judge.

1

5. The immigration judge granted DCAT based on the finding that Britania is more likely than not to be tortured in Mexico on account of her identity as a transwoman. The grant of DCAT precludes the U.S. government from removing Britania to Mexico. The U.S. government may only seek to terminate the DCAT grant by reopening Britania's removal proceedings. An immigration judge may only terminate a grant of DCAT protection based on evidence that the noncitizen will no longer face torture in the designated country of removal.

6. On June 19, 2025, Britania was transferred to the male-only Winn Correctional Center ("Winn") in Winnfield, Louisiana, where she was detained alongside men. I received no notice of her transfer to Winn. While at Winn, I was able to maintain communication with Britania through legal phone calls.

7. On or about November 12, 2025, despite her grant of DCAT to Mexico, the U.S. government deported Britania to Mexico. As her counsel of record, I was not provided with any notification of Britania's removal to Mexico.

8. I only learned that Britania was deported to Mexico when she managed to find a cellphone to borrow and called me on November 12, 2025. At that time, she was near Matamoros. I was shocked to learn that Britania was deported to the very country where an immigration judge found she was more likely than not to be tortured. I have grave concerns for her life and safety.

9. On the phone, Britania was panicked and disoriented. She cried during the call and struggled to articulate where she was or what had happened. She expressed that she had no cellphone, no money, no place to seek shelter, and felt that her life was in immediate danger. She told me that she likely would have significant difficulty contacting me again and that she would attempt to travel to an aunt's house to seek temporary shelter. Our call lasted approximately five minutes.

10. I next heard from Britania when she called me on November 14, 2025 after borrowing her aunt's phone. We spoke for approximately 17 minutes. She reported that she had managed to travel to her aunt's house and was living in hiding. Britania's family is not accepting of her identity as a transwoman and so while Britania hides in her aunt's home, she has been forced to use her deadname (the male name designated to her at birth) and hide her identity. This has caused her significant mental anguish. I am also forced to use Britania's deadname and conceal her status as a transwoman when communicating through her aunt, which has been demoralizing for me as her advocate and legal representative. Britania expressed that she does not feel safe in her family's home and fears that they will discover her trans identity and harm her or kick her out of their house.

11. Britania was deported without any of her property, including her identification documents, or any of her daily medications. While in ICE custody, Britania's physical and mental health were managed by a regimen of daily medications, including mental health medication, gender-affirming hormones, and life-sustaining HIV medication. I

am deeply concerned that this lapse in access to her medication regimen will cause significant deterioration of Britania's mental and physical health. Even missing one day of HIV medication can weaken an individual's immune system, leaving them susceptible to potentially life-threatening infections.

12. I am deeply concerned that Britania will be killed in Mexico. She is temporarily living in hiding in her aunt's house, but is at risk of facing harm at the hands of her family, should they discover her true gender identity. If forced to leave her aunt's house, I fear she will be quickly discovered and targeted for harm based on her status as a transwoman. Despite her grant of DCAT, Britania was deported to Mexico with none of her medication, none of her property or identification documents, no money, and no cellphone. Her ability to contact me is severely limited. I fear that with each passing day, Britania's health and safety will only further deteriorate.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this fifteenth day of November, 2025 at Oakland, California.

_Talia Lepson_
Talia Lepson